IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Linda M. Tucci f/k/a Linda M. Purdy, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: 2:05-1580-PMD |
| | ) | |
| First Unum Life Insurance Company a/k/a | ) | **ORDER** |
| Unum Provident Life Insurance Company, | ) | |
| a/k/a Unum, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court upon the following motions: (1) Defendant First Unum Life Insurance Company's ("First Unum") motion for summary judgment; and (2) Defendant First Unum's motion to strike all references to evidence outside of the administrative record. For the reasons set forth herein, the court grants Defendant's motion for summary judgment, thereby rendering moot Defendant's motion to strike.

**BACKGROUND**

**I.      Procedural History**

On May 18, 2005, Plaintiff Linda M. Tucci, f/k/a Linda M. Purdy, ("Tucci" or "Plaintiff") brought this action in the Court of Common Pleas for Charleston County, South Carolina, seeking to recover continuing benefits under a long term disability insurance plan. Specifically, Plaintiff's Complaint seeks a declaratory judgment and asserts causes of action for breach of contract, bad faith denial of an insurance claim, breach of fiduciary duty, and violation of the South Carolina Unfair Trade Practices Act. However, on June 3, 2005, Defendant First Unum removed the case to this court, asserting jurisdiction under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA") or alternatively under 28 U.S.C. § 1331.

On December 13, 2005, Defendant First Unum filed a motion for summary judgment, alleging that ERISA preempts Plaintiff's state law causes of action and that First Unum did not abuse its discretion in denying Plaintiff's claim for continuing disability benefits under the long term disability plan. Plaintiff filed a memorandum in opposition to Defendant's motion, asserting that Defendant has failed to meet its burden of establishing that an ERISA plan exists. Alternatively, if the court determines that Defendant has established that an ERISA plan exists, Plaintiff argues both that a *de novo* standard of review applies and that Defendant has the burden of establishing that Tucci could return to her regular occupation.

Lastly, on February 9, 2006, Defendant First Unum filed a motion to strike all references to evidence outside the administrative record, specifically, Plaintiff's argument on page three of her memorandum and accompanying exhibits A and B.

## II.    Factual Background

Plaintiff Tucci was employed by Hambre, Inc. ("Hambre") as an account manager, and Hambre maintained long term disability coverage with First Unum as part of its employee welfare benefit plan. In 2001, Tucci filed a claim with First Unum for long term disability benefits, alleging that she was "diagnosed with viral pneumonia followed by chronic fatigue syndrome causing extreme tiredness and shortness of breath - difficulty in talking," and that she had been unable to work since February 7, 2001, because of this condition. (Admin. Record at 1564.)

Initially, on or about August 20, 2001, First Unum denied Plaintiff's claim for long term disability benefits. However, Plaintiff appealed this denial and submitted additional medical information. Subsequently, on or about May 1, 2002, First Unum reversed the denial of Plaintiff's claim and approved her benefits. (Admin. Record at 1371-73.) However, approximately 18 months

later, on December 19, 2003, First Unum notified Plaintiff that it was denying her claim for continuing benefits, finding that Tucci no longer qualified for benefits. (Admin. Record at 235-38.) Plaintiff appealed this decision, and First Unum conducted a medical review of Plaintiff's appeal. On July 26, 2004, First Unum notified Plaintiff's counsel that it was upholding the denial of her claim. (Admin. Record at 739-42.) Plaintiff again appealed, but on December 28, 2004, First Unum again wrote Plaintiff's counsel that it was upholding the denial of Plaintiff's benefits. (Admin. Record at 755.)

## STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.' " *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a

disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## DISCUSSION

**I.    Defendant's Motion for Summary Judgment**

In its motion for summary judgment, Defendant First Unum asserts that Plaintiff's state law claims are preempted by ERISA. Moreover, Defendant asserts that it did not abuse its discretion in denying Plaintiff's continuing claim for disability benefits. Defendant states: "Because the policy grants discretionary authority to First Unum, the proper standard of review for the Court to employ in reviewing First Unum's benefit determination is an abuse of discretion standard." (Def. Mot. at 24.) In response, however, Plaintiff disagrees and first argues that First Unum has failed to meet its burden that an ERISA plan exists. Second, Plaintiff argues that a *de novo* standard of review applies to the decision to deny Plaintiff's claim for continuing benefits because the plan administrator is also the plan's insurer. (Pl. Opp. at 5.) In its Reply, Defendant steadfastly argues that a *de novo* standard of review does not apply, but rather, that a modified abuse of discretion standard applies. (Def. Reply at 4.) At this point, therefore, the court must determine whether ERISA covers the First Unum plan, such that Plaintiff's state law causes of action are preempted. Second, the court must apply the proper standard of review to determine whether First Unum abused its discretion in denying Plaintiff's claim for continuing benefits.

    **A.    ERISA Coverage of the First Unum Plan**

The threshold issue is whether ERISA covers the First Unum plan. ERISA applies "to any benefit plan if it is established or maintained" by any employer and/or employee organization representing employees "engaged in commerce or in any industry affecting commerce." 29 U.S.C.

4

§ 1003(a).  ERISA defines an employee welfare benefit plan as follows:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in Section 186(c) of this title (other than pensions on retirement or death and insurance to provide such pensions).

29 U.S.C.A. § 1002(1).

Defendant relies upon *Custer v. Pan American Life Ins. Co.*, to argue that ERISA applies to Hambre's group insurance plan.  In *Custer*, the Fourth Circuit Court of Appeals set forth a test for determining whether ERISA applies.  12 F.3d 410 (4th Cir. 1993).  The court stated, "for ERISA to apply, there must be (1) a plan, fund or program, (2) established or maintained (3) by an employer, employee organization, or both, (4) for the purpose of providing a benefit, (5) to employees or their beneficiaries."  12 F.3d at 417 (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982)) (en banc); *see also Madonia v. Blue Cross & Blue Shield of Virginia*, 11 F.3d 444 (4th Cir. 1993) (setting forth the same five elements and citing *Donovan*, 688 F.2d at 1371). The court in *Custer* also noted that "the statute explicitly states that the establishment of a plan may be accomplished through the purchase of insurance."  *Id*. (citing 29 U.S.C. § 1002(1)).  Moreover, "[t]he existence of a plan may be determined from the surrounding circumstances to the extent that a 'reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.' "  *Id*. (citing *Donovan*, 688 F.2d at 1373).

Ultimately, the court in *Custer* held that under the circumstances of that case, an ERISA plan was unquestionably established.  12 F.3d at 418.  The court stated:

5

> The group insurance policy was obtained by Ohio Valley Candy at the direction of its president for the benefit of the company's employees. The company determined the benefits to be provided by the policy, negotiated the terms of the policy and paid for one-half of the costs. The policy itself provides procedures for making claims and obtaining benefits. Moreover, when the employer became dissatisfied with Pan American Life and National Insurance during this dispute, it made the decision to cancel the policy and to obtain a replacement policy. Furthermore, the policy benefits thus obtained by the employees were of the type defined in 29 U.S.C. § 1002(1) (medical, surgical, hospital care). Finally, the benefits were provided to the employees by reason of their employment relationship to the company, and the employees were fully aware of the benefits, each having been provided with a summary and having paid for one-half of the costs.

*Id.* at 417.

In its motion for summary judgment, Defendant contends that Hambre's plan meets the criteria from *Custer*. Specifically, Defendant argues that Hambre applied for the coverage for its employees and is listed as the policyholder. Additionally, Hambre paid a portion of the premium for the coverage. And finally, the policy states that it is governed by ERISA to the extent applicable. (Def. Mot. at 23.) (citing Admin. Record at 793, 795, and 803.)

In contrast, Plaintiff claims that First Unum has no evidentiary support that Tucci's employer applied for coverage for its employees. (Pl. Opp. at 5.) Additionally, plaintiff states that the partial payment of premiums is insufficient to establish an ERISA plan. (Pl. Opp. at 5.) Essentially, Plaintiff argues that unlike in *Custer*, Defendant in the present case has failed to submit evidence that would support a determination that an ERISA plan existed. (Pl. Opp. at 5, n. 1.)

Upon a review of the record, the court believes that the circumstances of this case clearly indicate that ERISA governs Hambre's plan with First Unum. First, the circumstances establish that a "plan, fund or progran" existed because a reasonable person can ascertain "the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *See Donovan*, 688 F.2d at 1373. The plan lists Hambre, Inc. as the Policyholder and clearly intends to

6

provide benefits for long term disability. (Admin. Record at 795-822.) Moreover, the class of beneficiaries includes employees working at least 20 hours per week, and the plan provides that "[y]ou and your Employer share the cost of your coverage." (Admin. Record at 795.) Additionally, the plan provides specific procedures for receiving benefits. (Admin. Record at 797-98.) The plan also states that "[t]he **Policyholder** must send all premiums to UNUM on or before their respective due date." (Admin. Record at 799.) (emphasis in original). As previously mentioned, Hambre was the policyholder. Lastly, the "Certificate Section" of the policy provides that the policy " is delivered in and governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments." (Admin. Record at 802.) Ultimately, in light of the aforementioned, the court believes that more than enough evidence exists to conclude that a plan, established or maintained by Hambre, for the purpose of providing a benefit to its employees, was established. Accordingly, ERISA applies to the First Unum plan.

Because ERISA applies to the First Unum plan, the court must consider whether ERISA preempts Plaintiff's state law claims. "ERISA includes expansive preemption provisions which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *See Aetna Health, Inc. v. Davila,* 542 U.S. 200, 208 (2004) (internal citations and quotations omitted); *see* 29 U.S.C. § 1144(a) (stating that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" that is covered by ERISA). "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *See Pilot Life Ins. Co.*

7

*v. Dedeaux,* 481 U.S. 41, 54 (1987).  Therefore, as reiterated by the Supreme Court, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  *Aetna*, 542 U.S. at 209.

The question of whether Plaintiff's state law causes of action are completely preempted is determined by inquiring into whether they "fit within the scope of ERISA's § 502(a) civil enforcement provision, and as such, whether they [are] properly converted into federal claims." *See, e.g., Sonoco Prod. Co.v. Physicians Health Plan, Inc.,* 338 F.3d 366, 371 (4th Cir. 2003) (internal citations omitted).[1]  The Fourth Circuit has adopted the Seventh Circuit's test for determining whether a state claim is completely preempted by section 502.  *Id.* at 372.  This test sets forth three requirements to establish complete preemption:

> (1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must fall[ ] within the scope of an ERISA provision that [it] can enforce via § 502(a); and (3) the claim must not be capable of resolution without an interpretation of the contract governed by federal law,  i.e., an ERISA-governed employee benefit plan.

*Id.*; *see also Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1487 (7th Cir. 1996); *Butero*

---

[1]In *Sonoco,* the Fourth Circuit made clear that an analysis of complete preemption, and not the confusingly similar doctrine of conflict preemption, must be applied when one party removes the case to federal court on the grounds that Congress has so completely preempted a particular area that any complaint raising this select group of claims is necessarily federal in character.  338 F.3d at 372.  In the words of the Fourth Circuit, "[i]n the ERISA context, the doctrines of conflict preemption and complete preemption are important, and they are often confused."  *Id.*  When complete preemption exists, "the plaintiff simply has brought a mislabeled federal claim, which may be asserted under some federal statute."  *King v. Marriott Int'l, Inc.,* 337 F.3d 421, 425 (4th Cir. 2003); *Lippard v. Unum Provident Corp.,* 261 F.Supp. 2d 368, 376 (M.D.N.C. 2003) ("[C]omplete preemption  . . . exists when the preempted state-law claim falls within the scope of the exclusive civil enforcement mechanism of § 502, in which case the state-law claim is converted into a federal cause of action removable to federal court.").  On the other hand, conflict preemption, or ordinary preemption, generally arises as a federal defense to a Plaintiff's suit and does not authorize removal to federal court.  *Darcangelo v. Verizon Comm., Inc.,* 292 F.3d 181, 186-87 (4th Cir. 2002).

*v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999) (applying similar standard in complete preemption analysis).

Here, Plaintiff clearly has standing under § 502(a) to pursue her claim. Parties entitled to pursue an ERISA claim under § 502(a) are "participants," "fiduciaries," and "beneficiaries." *See* 29 U.S.C. § 1132 (a)(3). ERISA defines a "participant" as "any employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). Second, Plaintiff's claims fall within the scope of an ERISA provision that she can enforce via section 502. Section 502(a)(1)(B) allows a plaintiff to bring a claim "to recover benefits due to [her] under the terms of a plan." Plaintiff seeks the payment of benefits that she alleges are due to her. There can be no doubt that this type of relief falls within the ambit of remedies provided by section 502. *See, e.g.*, *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 290-91 (4th Cir. 2003) (holding that health maintenance organization (HMO) member's claims which sought return of plan benefits fell within scope of ERISA civil enforcement provision and were completely preempted); *Darcangelo,* 292 F.3d at 195 ("[A]n action to enforce the terms of a contract, when that contract is an ERISA plan, is of necessity an alternative enforcement mechanism for ERISA § 502."). Finally, Plaintiff's claims cannot be resolved without an interpretation of the plan which she claims provides these benefits. *See, e.g.*, *Powell v. Chesapeake & Potomac Tel. Co.,* 780 F.2d 419, 422 (4th Cir. 1985) ("To the extent that ERISA redresses the mishandling of benefits claims or other maladministration of employee benefit plans, it preempts analogous causes of action [including contract and tort claims], whatever their form or label under state law."). Accordingly, Plaintiff's state law claims are completely preempted by ERISA.

**B.    First Unum's Denial of Plaintiff's Continuing Benefits**

The parties dispute the relevant standard of review this court should employ in determining whether Defendant abused its discretion in denying Plaintiff's continuing benefits. Plaintiff insists that a *de novo* standard of review applies, while Defendant suggests that the denial should be reviewed under a modified abuse of discretion standard.

### 1. Standard of Review

"A denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1988). If there is sufficient discretionary authority, then the abuse of discretion standard applies and the denial will not be reversed "if reasonable, even if the court itself would have reached a different conclusion." *Booth v. Wal-Mart Stores, Inc. Assoc. Health and Welfare Plan,* 201 F.3d 335, 340 (4th Cir. 2000). This means that so long as the denial of benefits is the result of "a deliberate, principled reasoning process and . . . is supported by substantial evidence," it will not be disturbed. *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir. 1997).

Even under this deferential standard of review, however, evidence that the administrator or fiduciary who denied benefits was operating under a conflict of interest is relevant and "must be weighed as a facto[r] in determining whether there is an abuse of discretion." *Firestone,* 489 U.S. at 115. Thus, the Fourth Circuit has explained: "[t]he more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan term, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir.1997). The Fourth Circuit has employed a "sliding scale" approach to denials of benefits when the plan insurer

and administrator are the same. *Id.* Under this approach, the court must review the denial of benefits with "some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict." *Doe v. Group Hospitalization & Medical Serv.,* 3 F.3d 80, 87 (4th Cir. 1993).

### a. Defendant as Plan Administrator

"Proof of who is the plan administrator may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document." *Hamilton v. Allen-Bradley Co.,* 244 F.3d 819, 824 (11th Cir. 2001). The critical inquiry is whether the alleged administrator has "sufficient decisional control over the claim process." *Id.; see also Fisher v. Metropolitan Life Insurance Co.,* 895 F.2d 1073, 1077 (5th Cir. 1990) (finding "intuitive appeal" in the argument that insurance company was a 'de facto' administrator when it was "delegated a wide range of responsibility" and processed all claims and appeals procedures).

The parties do not appear to dispute that Defendant was administering all aspects of the determination of benefits. The plan itself details how Defendant manages the claims process and how Defendant will determine entitlement to disability benefits. (Admin. Record at 793-822.) Moreover, even if the express terms of the plan do not provide that Defendant is the plan administrator, Defendant had "sufficient decisional control over the claims process" to be considered the administrator of the plan. *See Hamilton,* 244 F.3d at 824. Thus, the court must consider whether Defendant was vested with sufficient discretionary authority to warrant a deferential abuse of discretion standard of review.

### b. Defendant's Discretionary Authority

Here, the First Unum plan plainly states that "[w]hen making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (Admin. Record at 802.) Thus, the plan specifically designates discretion to Defendant First Unum to review claims, to determine eligibility, and to construe contract terms. The court therefore finds that a modified abuse of discretion standard of review is appropriate; the court will adjust the standard of review by decreasing the deference to First Unum in proportion to the degree of First Unum's conflict of interest. Essentially, the court will review the merits of the denial of benefits to determine whether it was consistent with an exercise of discretion by a fiduciary acting free of conflicts. *Doe*, 3 F.3d at 87. Since Defendant had significant incentives to benefit itself by denying benefits, its decision to deny benefits must be both "more objectively reasonable" and supported by "more substantial. . . evidence." *Ellis,* 126 F.3d at 233. The issue essentially "comes down to whether plaintiff received a full and fair review." *Willis v. Baxter Int'l, Inc.,* 175 F.Supp.2d 819, 831 (W.D.N.C. 2001).

### 2.     Defendant's Denial of Tucci's Claim for Continuing Benefits

The court next must determine whether Defendant's denial of benefits was an abuse of discretion under the modified abuse of discretion standard, or whether Plaintiff in fact received a full and fair review of her claim for benefits. Defendant asserts that it did not abuse its discretion in denying Plaintiff's claim for continuing benefits because Plaintiff did not submit evidence of restrictions and limitations that prevented her from performing the material and substantial duties of her regular occupation.

In contrast, Plaintiff asserts that because First Unum granted benefits to her for a period of time, she had met her burden of establishing that she could not perform the material and substantial

duties of her regular occupation. Plaintiff claims, "in order for Unum to terminate benefits after Tucci having proven entitlement, Unum had the burden of establishing Tucci could return to her regular occupation." (Pl. Opp. at 7.) However, Defendant asserts that "Plaintiff's argument that the burden of proving and/or disproving disability is somehow shifted is contrary to Fourth Circuit law and the language of the plan." (Def. Reply at 5.) The court agrees with Defendant.

First, the plan explicitly authorizes First Unum to request proof of continuing disability.[2] Also, Plaintiff's reliance on *Courter v. First Unum Life Ins. Co.*, 2004 WL 3620001 (2d Cir. Dec. 14, 2004) (unpublished), is simply misplaced.[3] The fact that First Unum awarded benefits to Plaintiff for a time does not mean that the burden of proving a lack of disability shifted to Defendant. *See*, *e.g.*, *Mason v. M.F. Smith & Assoc., Inc.*, 158 F.Supp.2d 673, 684 (D.S.C. 2001) ("Under the terms of the Plan, the burden of proof was on the Plaintiff to prove that she was disabled and that her disability was continuing."); *Donnell v. Met. Life Ins. Co.*, 2006 WL 297314, n.9 (4th Cir. Feb. 8, 2006) (unpublished) ("Donnell has the burden to prove that she is entitled to receive disability benefits under the plan."). Moreover, First Unum's initial grant of benefits did not vest in Plaintiff a continuing right to those benefits. *See*, *e.g.*, *Gable v. Sweetheart Cup Co.*, 35 F.3d 852, 855 (4th

---

[2] The terms of the plan placed the burden of proof on Plaintiff to prove that she was disabled and that her disability was continuing. The plan provides the following: "We may request that you send proof of continuing disability indicating that you are under the regular care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us." (Admin. Record at 797.)

[3] In *Courter*, the Second Circuit Court of Appeals concluded that the defendant's termination of benefits was arbitrary and capricious. In so concluding, the court stated that the defendant had the burden of showing that the claimant could return to work before it terminated its benefits. 2004 WL 3620001. As Defendant correctly points out, this is not the law of the Fourth Circuit.

Cir. 1994) ("[A] plan participant's interest in welfare benefits is not automatically vested."); *Hensley v. Int'l Bus. Machines Corp.*, 123 Fed.Appx. 534, 538 (4 th Cir. 2004) (unpublished) ("But the fact that MetLife initially awarded benefits to Hensley does not mean that its subsequent termination of those benefits was the result of unprincipled reasoning. . . . the Fourth Circuit has held that no vested right to benefits accrues under an employee welfare benefits plan."). The court turns now to review First Unum's determination that Plaintiff was no longer disabled.

### a.      Terms of the Plan

The First Unum plan states:

You are disabled when UNUM determines that:

- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
- you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

(Admin. Record at 806.) (emphasis in original). The plan defines "material and substantial duties" as duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, UNUM will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

(Admin. Record at 820.) "Regular Occupation means the occupation you are routinely performing when your disability begins. UNUM will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." (Admin. Record at 820.)

To survive the modified abuse of discretion standard review, First Unum's decision to deny Plaintiff's claim for continuing benefits must have been reasonable. A decision is reasonable "if it

is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence."[4] *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995) (quoting *Baker v. United Mine Workers of Am. Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991) (internal citations omitted); *see also Stup v. First Unum Life Ins. Co. of Am.*, 390 F.3d 301, 307 (4th Cir. 2004) (quoting the same). Judicial review of the reasonableness of First Unum's decision is limited to the body of evidence before the administrator at the time of the decision. *See*, *e.g.*, *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 608-09 (4th Cir. 1999) ("[A]n assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time.") (quoting *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994)) (internal citations omitted); *Bernstein,* 70 F.3d at 790 (refusing to consider plan administrator's evidence developed after the final denial of benefits).

### b.     Deliberate, Principled Reasoning Process

First Unum's decision to terminate Tucci's long term disability benefits resulted from a deliberate and principled process. On September 25, 2003, consistent with the terms of the plan,

---

[4] The Fourth Circuit has alternatively framed reasonableness in a more open-ended way that considers the following eight factors: "(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have." *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 225, 342-43 (4th Cir. 2000). As the Fourth Circuit stated in *Donnell*, "We have never explicitly overruled *Booth*'s facially more expansive test of reasonableness. Recent decisions have embraced both standards. We reconcile the two lines of cases by viewing the *Booth* factors as more particularized statements of the elements that constitute a 'deliberate, principled reasoning process' and 'substantial evidence' of the reasons for applying a modified abuse of discretion standard of review." 2006 WL 297314 *6, n. 6.

First Unum wrote Plaintiff to request updated certification of her continued disability. (Admin. Record 231-34.) First Unum told Plaintiff that it had not received a copy of her medical records from Plaintiff's treating internist, Dr. Farrar. On October 17, 2003, Dr. Farrar submitted an attending physician's statement to First Unum, in which she indicated that Plaintiff should not do her current job. (Admin. Record at 526.) On December 16, 2003, First Unum conducted a medical review of Plaintiff's claim.[5] Subsequently, on December 19, 2003, First Unum completed its review and notified Tucci of its decision to terminate her long term disability benefits. (Admin. Record at 235-38.) First Unum notified Plaintiff of her ability to appeal this determination and to submit further documentation. (Admin. Record at 238.) Tucci in fact appealed this termination, and First Unum conducted another medical review of Tucci's claim. On July 26, 2004, however, First Unum notified Plaintiff's counsel that it was upholding the denial of her claim. (Admin. Record at 739-42.) Plaintiff again appealed, submitting a statement issued by Dr. Randi Popp, but on December 28, 2004, First Unum again wrote Plaintiff's counsel that it was upholding the denial of Plaintiff's

---

[5] First Unum's consulting physician, Dr. Donna Carr, noted that Tucci was diagnosed with chronic fatigue syndrome approximately four years ago, but that she had returned to work 20 hours a week and reported significant activity including exercising 4 times a week and involvement in community projects. Dr. Carr also noted that Tucci had gotten married and moved to South Carolina. Dr. Carr wrote:

> Her recent physical exam of 10/17/2003 states that she is feeling "pretty good" and her exam was unremarkable. The insured's report of activity is substantial. CFS in a majority of cases gradually improves over time, and most people resume full activity. The restrictions and limitations of [lifting up to ten pounds] is not based on objective physical findings such as strength and endurance testing and is overly restrictive given reported activities. There is no continuing support for impairment from CFS. Her only restriction is no heavy lifting, may lift up to 1-10 [pounds], and next appointment is for six months, indicating a low level medical concern.

(Admin. Record 580-81.)

16

benefits. (Admin. Record at 755.) With regard to Dr. Popp's letter endorsing part-time work capacity, First Unum stated that it "took the form of a conclusory statement without any clinical examinations or findings in support." (Admin. Record at 755.) First Unum found that, "based upon the totality of the information that currently exists in Ms. Purdy-Tucci's claim file, we have reasonably determined that she has regained full-time sedentary capacity, consistent with the performance of the material duties of her regular occupation." (Admin. Record at 755.) First Unum carefully reviewed all of Tucci's medical records,[6] performed a thorough evaluation of those records, offered Tucci the opportunity to provide supplemental medical evidence, and kept Tucci informed of the status of her claim. Accordingly, the court concludes that First Unum's decision was the result of a deliberate and principled decisionmaking process. *See also Hensley*, 123 Fed.Appx. at 538 ("But the fact that MetLife initially awarded benefits to Hensley does not mean that its subsequent termination of those benefits was the result of unprincipled reasoning."). The next issue is whether First Unum's decision was supported by substantial evidence.

### c. Substantial Evidence

Substantial evidence is more than a mere scintilla, but less than a preponderance. *See Hensley*, 123 F.Appx. at 537 (citing *Newport News Shipbuilding & Dry Dock Co. v. Cherry*, 326 F.3d 449, 452 (4th Cir. 2003). In the case *sub judice*, Defendant asserts that the "objective medical evidence in the administrative record did not support Plaintiff's subjective complaints of fatigue." (Def. Mot. at 28.) In contrast, Plaintiff claims that the evidence of record establishes that she cannot perform the duties of her regular occupation and that no independent reports conflict Tucci's

---

[6] In reviewing Plaintiff's entire file, First Unum reviewed the records from Dr. Kahn, Dr. Phelps, Dr. Justa, Dr. Fox, Dr. Popp, Dr. Herbold, Dr. Farrar, diagnostics, and surveillance reports.

physicians.[7]  (Pl. Opp. at 9.)

As previously mentioned, Plaintiff was employed as an account manager with Hambre.  In her employee statement, she indicated that the duties of her job were forty percent computer work and sixty percent phone work.  First Unum's March 15, 2004 letter to Plaintiff states:

> Ms. Purdy described her occupational duties as including administration of the executive benefits program involving extensive telephone contact and generating computerized spreadsheet and programming.  This was consistent with the Job Description provided by her employer, and indicated that her occupation was a sedentary professional office position with material duties consisting of servicing account [sic] using telephonic contact and computerized reports.

(Admin. Record at 631.)  This letter also states:

> Unum's medical department's file review indicated that the available information did not supported [sic] restrictions and limitations that would support a lack of capacity for full time sedentary work activity.  Specifically, Purdy-Tucci indicated to Dr. Fox that she was gradually improving and definitely felt better than two years ago.  It was also noted that she has worked 20 hours per week since July of 2001, and not attempted to increase her work schedule despite gradually feeling better than two years ago.  In addition, in October of 2003, Ms. Purdy-Tucci's [sic] also described to Dr. Fox that she was exercising four times per week for one and one quarter miles, and had plans to volunteer her time to make afghans for babies.  However, she has conversely indicated in September of 2003 [to Unum] that she could only walk around the block 2-3 times per week.  In addition, Ms. Purdy-Tucci's [sic] was observed on surveillance to be active running errands, shopping, and driving for hours as well as actively participating in moving her residence from New York to South Carolina.  These substantial activities and her self professed gradual improvement over the past 2 years is inconsistent with her alternate claims that she is very limited in her capacity to work and in her activities of daily living.  This raises a significant issue as to the credibility of Ms. Purdy-Tucci's reported limitations to Unum when compared to the activity level documented in the most recent medical treatment records and observed on surveillance.  The totality of the information available and reviewed by Unum's medical department supports a reasonable conclusion that Ms. Purdy-Tucci's [sic] has full time sedentary functional capacity.

---

[7] The Supreme Court has explicitly held that ERISA plan administrators are not required to accord any special deference to the opinions of treating physicians over those of non-treating consultants.  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

(Admin. Record at 632-33.) Thus, Defendant, in terminating Plaintiff's benefits, concluded that Plaintiff failed to submit sufficient medical evidence that she was unable to perform the material and substantial duties of her regular occupation. Defendant notes that the term "regular occupation" is a defined term that takes into account how a particular occupation is performed in the national economy rather than for a specific employer. Defendant states:

> [C]onclusory opinions by Plaintiff's treating physicians that Plaintiff cannot perform her "job" are of little relevance as to whether or not she could perform her occupation as it is performed in the national economy. Unum reviewed the specific restrictions and limitations, including her own physician's functional capacity evaluation, and the objective medical testing, to determine that Plaintiff had sedentary work capacity."

(Def. Reply at 6.) Ultimately, upon a review of the Administrative Record and in light of the aforementioned, the court concludes that substantial evidence supports First Unum's conclusion that Plaintiff was no longer disabled in accordance with the terms of the First Unum policy. The court therefore finds that even under the modified abuse of discretion standard of review, First Unum did not abuse its discretion when it terminated Tucci's long term disability benefits. Accordingly, the court grants Defendant's motion for summary judgment.

## II.     Defendant's Motion to Strike

On February 9, 2006, Defendant filed a motion to strike all references to evidence outside the administrative record. As an initial matter, Defendant is correct that in reviewing First Unum's decision, this court should limit its consideration to the body of evidence before the administrator at the time of the decision. *See*, *e.g.*, *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 608-09 (4th Cir. 1999) ("[A]n assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time.") (quoting *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994)) (internal citations omitted); *Bernstein,* 70 F.3d at 790 (refusing to consider

plan administrator's evidence developed after the final denial of benefits). In any event, because the court grants Defendant's motion for summary judgment, Defendant's motion to strike is rendered moot.

## CONCLUSION

It is therefore,

**ORDERED,** for the foregoing reasons, that Defendant's motion for summary judgment is **GRANTED**. It is further **ORDERED** that Defendant's motion to strike is rendered **MOOT**.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**March 13, 2006**